IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable R. Brooke Jackson

Civil Action No. 12-cv-00655-RBJ

JEFFREY BELLMAN, an individual and
THOMAS R. SAMUELSON, an individual,

     Plaintiffs,

v.

I3CARBON, LLC, a Colorado limited liability company,
PATRIC GALVIN, an individual,
ROBERT HANFLING, an individual,
FAISAL SYED, an individual,
CHRISTOPHER GALVIN, an individual,
REBECCA GALVIN, an individual, and
DAVID SUNSHINE, an individual,

     Defendants.

## ORDER

The Court addressed all dispositive motions but one in an order issued on June 12, 2015. ECF No. 92. The motion for summary judgment filed on behalf of defendants Robert Hanfling, Faisal Syed and David Sunshine [ECF No. 72] was not addressed at that time because defendants' reply was not yet due. The Court has now received and reviewed the reply. ECF No. 93. For the reasons set forth in this Order, the motion is granted as to Mr. Sunshine but denied as to Mr. Hanfling and Mr. Syed.

## BACKGROUND

I will not repeat the discussion of plaintiffs' allegations of fact and the history of this case set forth in some detail in my June 12, 2015 order. Very briefly, this case involves claims of securities fraud in the sale to the plaintiffs of limited liability company units in defendant

i3Carbon, LLC.  In addition to the company itself, the lead defendant, so to speak, is Patric Galvin.  Plaintiffs asserted claims against Mr. Galvin and the company under federal and state securities laws, negligent misrepresentation, civil theft and common law fraud.  The Court denied Mr. Galvin's motion for partial summary judgment dismissing the claims of plaintiff Samuelson, in which i3Carbon joined, based upon its finding that the claims presented genuine issues of material fact.  ECF No. 92 at 5-6, 26.

Plaintiffs asserted claims against Patric Galvin's brother, Christopher Galvin, based on "controlling person" liability under federal and state securities laws.  The Court denied Christopher's motion for summary judgment, again finding that summary disposition was precluded by the existence of genuine issues of material fact.  *Id.* at 7-11, 13-14, 26.

Plaintiffs asserted claims against Patric Galvin's wife, Rebecca Galvin, based upon "controlling person" liability under federal and state securities laws and aiding and abetting liability under state law.  The Court granted Rebecca's motion for summary judgment and dismissed all claims against her.  *Id.* at 7-9, 11-14, 26.

Plaintiffs asserted federal and state "controlling person" claims against Robert Hanfling and Faisal Syed and state law aiding and abetting liability against David Sunshine.  The Court denied these three defendants' motion to dismiss for failure to state a claim upon which relief could be granted.  *Id.* at 22-25, 27.  It reserved discussion of their contemporaneous motion for summary judgment pending receipt of their reply brief.  *Id.* at 25-26.  I turn to that now.

### FACTS

A. **Allegations in Amended Complaint.**

Plaintiffs allege that Robert Hanfling and Faisal Syed were members of the Board of Directors, officers and controlling persons of i3Carbon.  Amended Complaint [ECF No. 18] at

¶¶5, 6 and 17.  Defendant David Sunshine was an advisor to the company and to Patric Galvin, Mr. Hanfling and Mr. Syed, including being a member of the company's Board of Advisors.  *Id.* at ¶¶11, 17.  Mssrs. Hanfling, Syed and Sunshine all provided material information for, and participated in the drafting of, written materials included in an investment binder provided to both plaintiffs.  *Id.* at ¶23.

### B. Defendants' Evidence Submitted with Motion.

These defendants devoted a majority of their motion for summary judgment to an attempt to dispute and refute plaintiffs' securities fraud allegations against Patric Galvin and i3Carbon. *See* ECF No. 72 at 5-12.  As I at least implicitly found in my previous order, and now find explicitly, the list of allegations attributed to Patric Galvin and the investment binders which are said to have been misleading and made with scienter raise genuine issues of disputed fact that are inappropriate for summary disposition.

Defendants offer the following evidence that might be relevant to claims asserted against them:

1. In an Affidavit Mr. Sunshine states that Mr. Hanfling was a member of i3Carbon's Board.  Mr. Syed worked on business development for the company, mostly in India, and later joined the Board.  Mr. Sunshine was an independent contractor who performed business development work for the company in India and the United States.  ECF No. 72-2 at ¶2.

2. The Affidavit also states that

- I3Carbon did have agreements for obtaining more than two billion metric tons of coal, an existing product sales pipeline, and letters coming to supply copper products for sale in India.

- Mr. Sunshine believes that statements in the investment binder regarding those facts were true.
- I3Carbon did have the ability to deliver five million metric tons of coal within 30 days, albeit that different types and sources of coal must be matched with appropriate buyers.
- Anticipated joint venture partners had offered a line of credit to i3Carbon from a Deutsche Bank guarantee.
- I3Carbon had signed a term sheet to acquire Zulu, Inc., which had property rights in Botswana.
- Dr. Narayanan was selected and served on i3Carbon's Board.
- I3Carbon was authorized by Patriot Coal to sell coal products.

*Id.* at ¶¶3-9.

3. An undated document, appearing to be a slide presentation, entitled "Business Outline i3Carbon, LLC," lists Mr. Hanfling, Mr. Syed and Mr. Sunshine, all associated with the Churchill Business Group, as members of i3Carbon's "Current Team" (together with Patric and Christopher Galvin and others). ECF No. 72-3 at 13. In a similar set of slides headed "Joint Venture Discussion with COAL India," the members of i3Carbon's Current Board of Directors are listed as Patric Galvin, Dr. Narayanan (former Chairman of Coal India, Ltd.), Mr. Hanfling (identified as a "former Deputy Undersecretary of U.S. Department of Energy, US DOE") and Mr. Syed (identified as an "Entrepreneur"). ECF No. 72-3 at 13, 28.

4. Article VI to the Bylaws of an entity called GCS Holdings, LLC identifies Patric Galvin and Mr. Syed as the initial members of GCS Holdings' Board of Managers and entrusts the Board with the management of the company. ECF No. 72-6 at 15,-17.

5. Someone with the initials "BOH" (Mr. Hanfling?) has initialed each page except the signature page of a document entitled Zulu, Inc., Summary of Terms, Reverse Merger of Public Stock. ECF No. 72-8 at 27-31. The document is executed by the Chairman of Zulu and Patric Galvin.

### C. **Plaintiffs' Evidence Submitted with Response.**

The following evidence included in Plaintiffs' combined appendix submitted in opposition to all dispositive motions arguably is relevant to this motion:

1. In i3Carbon's responses to plaintiffs' first set of written discovery, Mr. Hanfling is identified as the Chairman and a member of the Board of Directors from inception in June 2010 through at least April 14, 2011. Mr. Syed is identified as Director of Sales and a member of the Board of Directors from inception through at least April 14, 2011. Mr. Sunshine is identified as Director of Business Development and a member of the Board of Advisors from inception until at least April 14, 2011. ECF No. 76-10 at 3-4.

2. Mr. Syed testified in his deposition that his involvement with what became i3Carbon began roughly near the end of 2009 or beginning of 2010. He and Mr. Sunshine, and later Mr. Hanfling determined that there was an opportunity to partner with government agencies in India to bring in U.S. coal. One or more of them contacted Patric Galvin, whom they understood to have relationships with energy and raw materials producers and investment bankers. Working together as a "team," they discussed strategy for developing that market. Their discussions included inviting India's Minister of Coal to a meeting. ECF No. 67-9 at 58-65.

3. Mr. Sunshine and Patric Galvin, among others, attended the meeting with the Indian Minister of Coal at Mr. Syed's home on May 20, 2010. On the night before the meeting Mr.

Syed, Mr. Sunshine and Patric Galvin met with a Columbian coal mining group and discussed a possible joint venture with that company and Coal India Ltd.  ECF No 76-11 at 1-2.

4. The slide presentations that listed Mr. Galvin, Mr. Hanfling, Mr. Syed and Dr. Narayanan as the Current Board of Directors and that include Mr. Hanfling, Mr. Syed and Mr. Sunshine in the Current Team, discussed above, were reused in a variety of presentations.  *See, e.g.,* ECF Nos. 76-23 at 3; 76-26 at 2; 76-27 at 7.

5. Mr. Sunshine and Mr. Syed worked on presentations such as the "draft minister presentation."  ECF No. 76-29.

6. Mr. Syed was involved with Patric Galvin in soliciting Dr. Narayanan for the i3Carbon Board and the terms of his proposed affiliation with the company.  ECF No. 76-31.  Mr. Hanfling and Mr. Sunshine were copied on the exchange of emails about this.  *Id.*

7. Mr. Hanfling worked with outside legal counsel on such things as the Board of Directors Agreement, legal issues, the division of the "equity pie," and representations that had been made to potential investors in subscription agreements.  ECF No. 76-32.

8. Mr. Hanfling, Mr. Syed and Mr. Sunshine were copied on Patric Galvin's email exchange with outside legal counsel concerning the status of legal matters.  ECF No. 76-33.

9. Calling himself a "disinterested member" and the "Managing Member" of i3Carbon, Mr. Hanfling signed a resolution accepting as an in-kind investment Mr. Samuelson's purchase of 500 units of i3Carbon, LLC, valued at $125,000, in exchange for transfer of Mr. Samuelson's WER stock.  ECF No. 76-35.

10. Mr. Hanfling and Patric Galvin jointly approved disbursements on September 24, 2010 to Mr. Syed ($20,000) and Mr. Sunshine ($10,000) for consulting services, plus $14,061.13 to Mr. Sunshine for an expense reimbursement.  ECF No. 76-36.

11. In total, by May 2011 Mr. Syed or an entity associated with him apparently received $292,250 in consulting fees. Mr. Sunshine apparently received $80,000 in consulting fees. *See* ECF No. 76-49. Two months earlier Mr. Hanfling suggested that there should be written narratives to document disbursement of funds and expressed concern about "possible negative consequences of someone performing a detailed audit of i3C's books." ECF No. 76-47 at 1.

12. Various internal emails and emails exchanged with outside counsel appear to consider Mr. Hanfling, often Mr. Syed and sometimes Mr. Sunshine to be members of the management team of the company. *See, e.g.,* ECF Nos. 76-14, 76-38, 76-39, 76-40, 76-42, 76-43, 76-46 (including Mr. Syed, Mr. Hanfling and Mr. Sunshine as members of "our management team"), 76-47, 76-48, 76-50, 76-51, 76-51.

13. On October 28, 2010 Mr. Hanfling encouraged Patric Galvin to "Go forth and get $$$$." ECF No. 76-40. But on November 11, 2010 Mr. Hanfling expressed concerns to outside legal counsel about possible legal and business problems from representations Patric Galvin was making to potential investors. ECF No. 76-41. On April 16, 2011 Mr. Hanfling indicated in an email to outside counsel that the three Churchill partners (Hanfling, Syed and Sunshine) wanted out of any liability and wanted hold-harmless agreements from the current investors, which he considered to be a "critical issue." ECF No. 76-50 at 2. On the following day Mr. Hanfling reminded outside counsel that Patric Galvin could not make any commitments to investors without the Board's approval. *Id.* at 1.

**D. Defendants' Evidence Submitted with Reply Brief.**

The information in the two exhibits to the Reply Brief that appears to relate to these defendants' knowledge or participation in the alleged misrepresentations and omissions attributed to Patric Galvin and i3Carbon is as follows:

1. During his deposition Patric Galvin testified that he prepared a draft entitled "Joint Venture Discussion with Coal India" [possibly the same as ECF No. 7203 at 17] in anticipation of a presentation to Coal India Limited in India. ECF No. 93-2 at 15-16. When asked whether he sent his draft to "the same four, five individuals to review or comment" (they were not identified in the excerpt provided), he testified that he did not. *Id.* But he did run it by Mr. Syed, Mr. Sunshine and Daljit Chawdhary, the personal secretary for the Chairman of Coal India Limited. *Id.* at 17. He explained that the pre-presentation "was to ascertain whether we had too [sic] funding requirements, world production of coal on a country-by-country basis, and average pricing for purchased coal on an international basis by country, estimations of the acquisitional costs of a number of different cites [sic] we were looking at in the culmination of those – that data." *Id.* at 17-18. The data was in the form of Excel spreadsheets mainly created by Conrad Shillingburg. *Id.* at 18.

2. Patric Galvin testified that he and Mr. Sunshine physically put together the investment binders that were created in New York, including the one that was given to Mr. Samuelson. Three investment binders were given to Mr. Bellman, but Mr. Galvin was not sure whether they were among the binders created in New York or were made in Denver. *Id.* at 19-20.

3. Mr. Sunshine testified in his deposition that he did not believe he had a role in preparing the "Business Outline" [possibly ECF No. 72-3 at 13]. ECF No. 93-2 at 22.

## CONCLUSIONS

### A. Controlling Person Liability (Hanfling and Syed).

I discussed the elements of "controlling person" liability in my previous order. Briefly, section 20(a) of the Securities Exchange Act of 1934 states:

> Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable

> jointly and severally with and to the same extent as such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

15 U.S.C. § 78t(a).

To establish controlling person liability plaintiffs must establish a primary violation and "control" over the primary violator. *Maher v. Durango Metals, Inc.,* 144 F.3d 1302, 1305 (10th Cir. 1998). If both elements are established, the burden shifts to the defendant to show "lack of culpable participation or knowledge." *Id.* "Control" means "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise." 17 C.F.R. § 230.405. The statute is remedial and "has been interpreted as requiring only some indirect means of discipline or influence short of actual direction to hold a 'controlling person' liable." *Maher,* 144 F.3d at 1305 (citing *Richardson v. MacArthur,* 451 F.2d 35, 41-42 (10th Cir. 1971)).[1]

The parties have focused mostly on the alleged primary violation, which essentially amounts to whether Patric Galvin and i3Carbon violated the securities laws by intentionally misrepresenting material facts or omitting to disclose material facts.[2] Without expressing any opinion on the merits of plaintiffs' claims, I find and conclude that there are genuine disputes of fact concerning whether the representations said to have been made to one or both plaintiffs by Patric Galvin directly, on in the investment binders presented to them, contained material

---

[1] Colorado Securities Act's provision on controlling person liability, C.R.S. § 11-51-604(5)(b), is nearly identical to section 20(a) of the Securities Exchange Act of 1934. To establish controlling person liability under the Colorado Securities Act the plaintiff must establish a primary violation of the securities laws and "control" by the defendant. *In re Stat-Tech Securities Litigation,* 905 F. Supp. 1416, 1429 (D. Colo. 1995). Here, both parties agree that the same standards apply under the federal and state statutes. Motion [ECF No. 67] at 9-10; Response [ECF No. 80] at 7.

[2] Liability under § 10(b) and Rule 10b-5 requires proof of scienter. The Supreme Court defined scienter to mean "the intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 193 (1976). In *Matrixx Initiatives, Inc. v. Siracusano,* 131 S.Ct. 1309, 1312-13 (2011) the Court assumed, without deciding, that scienter can also be established by a showing of "deliberate recklessness." The Tenth Circuit has held that it can. *Anixter v. Home-Stake Production Co.,* 77 F.3d 1215, 1232 (10th Cir. 1996).

9

misrepresentations or material omissions of material facts; whether plaintiffs relied on misrepresentations (or would be deemed to have relied on omissions); and whether any material misrepresentations or omissions were made with scienter.  Accordingly, summary disposition of the claims of a primary violation is not appropriate.

The issue with respect to Mr. Hanfling and Mr. Syed is whether plaintiffs have come forward with sufficient facts to create a triable issue concerning control.  As indicated above, control means "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise."  17 C.F.R. § 230.405.  Because the statute is remedial in nature, the bar is not terribly high, "requiring only some indirect means of discipline or influence short of actual direction to hold a 'controlling person' liable."  *Maher,* 144 F.3d at 1305.

Mr. Hanfling and Mr. Syed were both officers and members of the Board of Directors of i3Carbon.  According to Mr. Hanfling, Patric Galvin could not make any commitments to investors without Board approval.  ECF No. 76-50 at 1.  One must also keep in mind that, despite its large ambitions, i3Carbon was a relatively small, start-up business.  Mr. Hanfling and Mr. Syed were involved in its creation, and they were actively involved in its marketing efforts as well as in the management and administration of the business.

Defendants provided essentially no evidence that, despite their titles, Mr. Hanfling and Mr. Syed had no power to affect the representations that were made by Mr. Galvin and in the investment binders to the plaintiffs.  Likewise, there is no evidence that Mr. Hanfling or Mr. Syed lacked the ability to verify the accuracy of those representations.

In short, it is impossible on the present record for this Court to hold as a matter of law that Mr. Hanfling and Mr. Syed lacked "control" as that term has been defined by rule and by

case law.  Even assuming that their position with the company gave them "control," they are not liable if, in the words of the statute, they "acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action," or in the words of the *Maher* case, they can show "lack of culpable participation or knowledge."  144 F.3d at 1305.  But those issues also present genuine issues of material fact that are not appropriate for summary judgment.

### B. Aiding and Abetting Liability (Mr. Sunshine).

Mr. Sunshine was not an officer or a member of the Board of Directors of the company. Plaintiffs do not contend that he has liability under the federal securities laws as a "controlling person" or otherwise.  Instead they assert that he has "aiding and abetting" liability under the Colorado Securities Act which provides,

> Any person who knows that another person liable under subsection (3) or (4) of this section is engaged in conduct which constitutes a violation of section 11-51-501 and who gives substantial assistance to such conduct is jointly and severally liable to the same extent as such other person.

C.R.S. 11-51-604(5)(c).[3]

As I indicated in my previous order, there do not appear to be Colorado appellate decisions interpreting this statute.  At a minimum, however, plaintiffs must establish that Mr. Sunshine (1) knew that another person was engaging in conduct that would constitute fraud or other unlawful conduct in the sale of a security, and (2) gave substantial assistance to the perpetration of the conduct.  The statute "is intended to limit aiding and abetting claims to those instances where the plaintiff can demonstrate that the defendant had knowledge of the primary

---

[3] C.R.S. § 11-51-501, the analogue to Section 10 of the Securities Exchange Act of 1934 and Rule 10b-5, prohibits securities fraud.  *See People v. Rivera,* 56 P.3d 1155, 1163 (Colo. App. 2002).  As relevant here, C.R.S. § 11-51-604(3) and (4) concern civil liabilities for persons who engage in fraud or other prohibited conduct in the sale of securities.

violation." *Stat-Tech Liquidating Trust v. Fenster,* 981 F. Supp. 1325, 1339 (D. Colo. 1997). Recklessness is insufficient. *Id.*

Mr. Sunshine has come forward with at least some evidence to the effect that he did not know that Patric Galvin was engaging in conduct that would constitute fraud or other unlawful conduct. In his Affidavit he listed several of the alleged misrepresentations that he, contrary to plaintiffs' allegations, believed to be true. These included certain representations made in the investment binders that he helped to assemble and to which he, allegedly, contributed information.

Plaintiffs' burden at the summary judgment stage is relatively light. They need only come forward with some evidence that establishes the existence of a genuine issue of material fact that is disputed. Moreover, the evidence and inferences that might reasonably be drawn from the evidence are viewed in the light most favorable to the plaintiffs at this stage. *Riser v. QEP Energy*, 776 F.3d 1191, 1195 (10th Cir. 2015). But plaintiffs have produced no evidence that, even liberally construed, indicates that Mr. Sunshine knew that Mr. Galvin knowingly or intentionally misrepresented material facts or omitted material facts in his pitch to the plaintiffs, including in the investment binders.

In sum, the facts that Mr. Sunshine was part of the threesome from the Churchill Business Group, that he was actively involved during the creation of the company, that he was an advisor to Patric Galvin, and that he participated in the creation of the investment binders and other business development activities are not enough. There has to be some evidence from which a reasonable jury could infer knowledge of the primary violation (and that he gave substantial assistance to the perpetration of the violation). From the record before me I find that plaintiffs simply do not have the goods when it comes to Mr. Sunshine. The requirements for

aiding and abetting liability, which is the only violation attributed to Mr. Sunshine, are materially different that the requirements for controlling person liability.  I conclude that there is no basis to subject him to the further expense and stress of a trial.

## **ORDER**

Defendants' (Hanfling, Syed and Sunshine's) motion for summary judgment [ECF No. 72] is GRANTED IN PART and DENIED IN PART.  It is denied as to defendants Robert Hanfling and Faisal Syed.  It is granted as to defendant David Sunshine, and judgment enters in his favor dismissing the claim against him with prejudice.  Mr. Sunshine is awarded his costs pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.

DATED this 26th day of June, 2015.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge